## Keyser *versus* Rodgers.

*Party to suit competent to testify to court in matters auxiliary to the trial.
—Action of trover suspended pending indictment for larceny.*

1. A party to a suit is competent to testify respecting matters which are only auxiliary to the trial, and are addressed to the court.

2. Thus where it was objected to the deposition of a witness offered on the trial of a case, that he was alive and in the county at the time, the party offering the deposition is competent to prove that the witness was sick and unable to attend court.

3. Though the plaintiff had caused the defendant to be indicted for larceny, he might, pending the prosecution, institute a civil action of trover, in respect to the same goods: for the civil suit was only suspended until the criminal prosecution was disposed of, and could then be tried.

ERROR to the Common Pleas of *Franklin county*.

This was an action on the case by William Rodgers against William Keyser.

The plaintiff declared in trover for a number of articles of household and kitchen furniture, to which defendant pleaded not guilty and property, and filed the following notice of special matter:—

"Defendant will prove, under the pleadings in this action, that the property claimed by the plaintiff in his *narr.*, was bought by the plaintiff at a public sale, and defendant became his security in a note given for the price of said property. That plaintiff then made an agreement in writing with defendant, that said property should be pledged to him until said plaintiff should pay said note. That said plaintiff never did pay said note, and therefore defendant was entitled to possession of said property.

[Keyser *v.* Rodgers.]

: " Defendant will further prove that at the time the above action was brought there was a prosecution pending against defendant, upon the oath and information of said plaintiff, charging said defendant with having stolen the property now claimed to be recovered in this suit, and that plaintiff cannot for that reason recover in this action."

On the trial, the defendant offered the deposition of John Hege. This was objected to, because witness was alive, and within the county of Franklin. Counsel then proposed to prove by the defendant " that John Hege, who was in the county, and whose deposition he proposes to read, is sick, and unable to attend court." This was also objected to, and the objection sustained.

The defendant proposed to prove by C. H. McKnight, that the goods mentioned in the list of goods shown witness, were bought from him by Rodgers the plaintiff, and settled for by the defendant. This evidence was offered in connection with the agreement between the parties for the purpose of showing that the defendant had a right to retain the goods in suit until this as well as other debts were paid.

Objected to : 1st. Because the article of agreement does not set forth that Rodgers was to pay for these goods. 2d. That that part of the agreement which speaks of pledging goods for debts was interlined after the agreement was executed, without the consent of Rodgers. 3d. That there is no evidence identifying this bill of goods as. one of the debts for which the goods in controversy were pledged. · 4th. That this bill is not in the special matter of defendant.

The objections were sustained by the court, and the evidence rejected.

The counsel for defendant offered in evidence the sale list of the personal property of Peter Shaffer, and also the sale list of the personal property of Elizabeth Shaffer, deceased, filed among the records of the court, showing the sale to William Rodgers of certain articles claimed in this suit, to be followed by evidence that defendant bailed plaintiff for the price of said articles, and afterwards paid the vendue notes. This evidence was offered in connection with the agreement between the parties to prove a qualified property in defendant in such articles.

Objected to, and objections sustained, and evidence rejected.

Among the points presented by the parties on which the instruction of the court was requested, was the following on the part of defendant : " That the civil suit could not.be instituted in this case until the criminal proceeding for larceny was ended."

The plaintiff also requested the court to charge . " that, because the defendant unlawfully took possession of the personal property of the plaintiff, and forcibly withheld the same, and refused to deliver up the same to the plaintiff on demand made for that pur-

[Keyser *v.* Rodgers.]

pose, threatening violence to plaintiff's agents if they approached to take the property, the jury may give exemplary damages."

The court below (KING, P. J.) charged the jury as follows :—

" This is an action of trover to recover the value of goods left by plaintiff in his house, and which were taken possession of by defendant while the plaintiff had left home on a visit.

" In our opinion the plaintiff is entitled to a verdict for the value of the goods, and such damages as the plaintiff has sustained by the detention of the same.

" The plaintiff asks that he shall have exemplary damages, because of defendant's conduct in resisting the effort made by his agent to obtain the possession of the goods, and has presented a point to that effect to the court.

" We answer this point by saying, that if you believe that the defendant refused to give up the goods from a disposition to harass and annoy the plaintiff and his family, and without any grounds of claim or title to the goods, then you may give such damages as in your judgment will be right and proper as a compensation to the plaintiff, and as a punishment to the defendant for his misconduct.

" The counsel for defendant have submitted two points, which we dispose of as follows :—

" In his first point he asks the court to instruct you that this action could not be instituted until the criminal prosecution was ended.

" We say, for the present, that during the pendency of the prosecution this suit could not be tried ; that under the authorities produced before us, it would be suspended until the indictment for the larceny was disposed of. But it has been agreed by the counsel that the court may reserve the point and consider it, and if we shall come to the conclusion that the right of action was suspended until the trial of the indictment, direct a judgment to be entered for the defendant, notwithstanding the verdict.

" The second point we answer thus :—The demand of the goods by the plaintiff, and the refusal of the defendant to deliver them, amounts to a conversion of them to his own use. If there was no other actual conversion of the property by the defendant, prior to the date of this demand and refusal, and if you believe that this demand and refusal did not occur until after the institution of the suit, then the action was prematurely commenced. This suit is to be tried on the cause of action which existed at the time the writ was issued. The evidence on this point seems to the court to sustain the allegation that the demand was made prior to 18th March , 1864—when the suit was commenced—but it is for you to decide.

" Is there any evidence of an actual conversion by defendant prior to the date of the demand and refusal ? The defendant, it is in proof, took possession of the goods before that time, and

[Keyser *v.* Rodgers.]

refused to give the goods to Mickley, who went there with a wagon to get them. Mickley says he went there to get the goods for Rodgers. You will determine from the evidence in the cause whether he was duly authorized to go there for these goods.

"We submit the evidence in regard to the amount and value of the property entirely to you. There is no doubt but that there was considerable property in the defendant's house when he left it—as much as men in his condition of life usually have: You must ascertain the articles of property and the value of them as well as you can, from all the evidence in the cause. It may be observed that it was fully in the power of the defendant to furnish satisfactory evidence on this point, and his neglect or refusal to do so, in the circumstances of this case, will justify you in giving the most favourable consideration to the evidence given by the plaintiff.

"A point has been raised in the discussion in relation to the testimony of Winters. It is alleged that this witness was bound to remember the articles contained in the list he read then to defendant, independently of the list. We say that it is proper that he should refresh his memory from the list."

On the reserved point the court delivered the following opinion :—

"In the case of Gimson *v.* Woodful, 2 C. & P. 41, cited in the case of Hutchinson *v.* Bank of Wheeling, 5 Wright 42, which was an action of trover for a mare, it was ascertained in the course of the trial, that the plaintiff had good reason to believe that the mare had been stolen by the person who sold it to the defendant, and Best, C. J., held, that the plaintiff should be nonsuited because he had made no effort to have the felon prosecuted and brought to justice. In this case the plaintiff commenced a prosecution for larceny against the defendant, and, before the trial was ended, instituted this action of trover—the prosecution was not abandoned—on the contrary the defendant was duly tried and acquitted, as appears from the evidence, on the ground that he had taken the property under a claim of right. The plaintiff, therefore, did all that public policy and the law required at his hands.

"Whilst it is ruled in Hutchinson *v.* Bank of Wheeling, that the private action of trover is *suspended* until the public prosecution for the offence is duly conducted and ended, it is also held, that the private wrong is not merged in the public one, and that the public prosecution is not intended to supersede the private action. No good reason, therefore, can be perceived why the private action may not be commenced simultaneously with the criminal prosecution, subject to the rule that all proceedings in the former shall be suspended until the latter has been tried and disposed of. This rule will subserve the ends of public justice quite as effectually as if it were settled that the right to commence the

[Keyser *v.* Rodgers.]

private suit must await the termination of the public prosecution, and may afford the only opportunity the plaintiff may have—the crime of larceny being a bailable offence—of vindicating his rights in the civil courts.

"Inasmuch, therefore, as the question in the form now presented has not been determined by the Supreme Court adversely to the views we have expressed, we stand by our first impressions, and direct judgment to be entered on the verdict, on payment of the jury fee and notice to counsel for defendant as recognised by the rules of court."

Under the ruling of the court there was a verdict and judgment for plaintiff. The defendant thereupon sued out this writ, and assigned for error:—1. The rejection of the deposition of John Hege and C. H. McKnight; the rejection of the vendue lists above mentioned; the answer given to the points of plaintiff and defendant; and the judgment entered on the reserved point.

*J. McD. Sharpe,* for plaintiff in error.

*F. M. Kimmell* and *G. M. & W. S. Stenger,* for defendant.

The opinion of the court was delivered, June 29th 1865, by

STRONG, J.—This was an action of trover, in which one branch of the defence was, that under an agreement between the parties, the property claimed by the plaintiff had been pledged to the defendant, and that his refusal to give it up was therefore not unlawful. To sustain the defence, a copy of a very obscure and informal article of agreement was offered in evidence, in which interlineation was apparent. No objection appears to have been made, because it was a copy, but to explain the interlineations, and to show that all the alterations, if any, were made before the agreement was signed, the defendant offered a deposition of John Hege. To this the plaintiff objected for the reason that the witness was alive and in the county. It was then proposed to prepare the way for the admission of the deposition, by proof that Hege was sick and unable to attend court, and this proof it was proposed to make by the defendant himself. The court overruled the proposition, and herein we think there was error. It may be, the deposition would have availed nothing had it been admitted. This we cannot now determine. It is not before us, and no objection was made in the court below on that ground. The question now relates exclusively to the competency of the medium of proof of the inability of the witness to attend the court, and this is to be considered with reference to the matter proposed to be proved. What was offered was evidence to the court, not for the jury. It has always been held in this state, as it has been generally elsewhere, that a party to a suit is competent to testify respecting

[Keyser *v.* Rodgers.]

matters which are only auxiliary to the trial, and are addressed to the court. Generally. anything which is a necessary preliminary to the introduction of secondary evidence may be made to appear by the oath of a party. Thus in Douglas's Lessee *v.* Sanderson, 2 Dall. 116, it was ruled that a plaintiff might prove by his own oath the death of a subscribing witness to a deed, as introductory to the admission of proof of the deceased witness's handwriting. So it has been held a party may prove the loss of a paper: Mecker *et al. v.* Jackson, 3 Yeates 442; or notice to produce papers preparatory to proof of their contents : Jordan *v.* Cooper, 3 S. & R. 564; or notice to take depositions, or that a deposition was taken at the time and place designated in the rule and notice : Black *v.* Moore, 1 Barr 344. So a party may prove his family bible, Carskadden *v.* Poorman, 10 Watts 84, and in Little's Lessee *v.* Flora (cited 1 Yeates 16), it was held that a plaintiff might be examined to prove that a material witness whose deposition had been taken, was unable to attend court in consequence of old age and indisposition, in order to entitle the deposition to be read. This was a decision of the very question we have now before us, and so settled appears to be the rule that Greenleaf in his Treatise on Evidence, § 349, states it as follows : " In questions which do not involve the matter in controversy, but matter which is auxiliary to the trial, and which in their nature are preliminary to the principal subject of controversy, and are addressed to the court, the oath of the party is received. Of this nature is his affidavit of the materiality of a witness ; of diligent search made for a witness or paper ; of his inability to attend ; of the death of a subscribing witness, and so of other matters of which the books of practice abound in examples." Such being the rule, it is manifest the court erred in refusing to permit the defendant to prove by his own oath that John Hege was unable to attend the court, and thus prepare the way for his deposition.

In regard to the second and third assignments of error, we have to remark that if the agreement was received, the evidence referred to in these assignments should also have been received. Disconnected from the agreement, the proposed evidence was irrelevant, but if the goods, for the conversion of which this action was brought, were purchased from McKnight and the Shaffers, and if the defendant became the surety of the plaintiff in the purchase under an agreement that they should belong to the defendant until paid for, it was a material fact which the defendant should have been allowed to prove. Whether the goods thus bought were those for which the suit was brought or not, was a question for the jury. Our paper-books do not show us clearly whether the agreement was received in evidence. If at the next

trial it should be, then the other evidence should be received in connection with it.

There was no error in the charge of the court, nor in the disposition made of the reserved point. It is true, that originally at common law, a party from whom goods had been stolen could only obtain restitution from the thief on an appeal of larceny. Hence it was held, an action of trover would not lie. But this is not the modern doctrine. The most that can be said is, that a civil action is suspended until the criminal prosecution is disposed of. In this case the plaintiff caused the defendant to be indicted for the larceny of the goods, and the indictment failed. While it was pending this action of trover was brought, but it was not tried until after the defendant was acquitted of the larceny. Under these circumstances it would have been too much for the court to say the action could not be sustained. Had the defendant desired to take advantage of the pendency of the public prosecution, he might have prayed that the parol might demur, but beyond this he could not defend for such a cause.

The instructions given to the jury respecting the damages were unexceptionable, considering the nature of the case.

Judgment reversed, and a *venire de novo* awarded.